ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| MMG I PR CR, LLC<br><br>　　Peticionaria<br><br>　　　　v.<br><br>CARMEN GLORIA AYALA VAZQUEZ Y OTROS<br><br>　　Recurrida | **KLCE202500312** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm.: BY2020CV01416<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico a 8 de mayo de 2025.

Comparece ante este foro MWPR, LLC (MWPR o "la peticionaria") y nos solicita que revisemos una *Orden* notificada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 7 de febrero de 2025. En virtud de esta, el foro primario declaró No Ha Lugar su *Moción Solicitando la Continuación de los Procedimientos*, basado en la *Sentencia* notificada el 13 de mayo de 2021.

Por los fundamentos que se exponen a continuación **EXPEDIMOS** el auto de *certiorari* y **REVOCAMOS** la determinación recurrida.

### I.

El 18 de marzo de 2025, la MMG I PR CR, LLC[1] (MMG) presentó una *Demanda* en cobro de dinero y ejecución de hipoteca en contra de la Sra. Carmen Gloria Ayala Vázquez

---

[1] El 6 de febrero de 2025, MMG presentó una *Moción Para Sustituir Parte Demandante*. Adujo que MWPR adquirió el préstamo en controversia, convirtiéndose en el tenedor por endoso y de buena fe del pagaré. Sostuvo que a tenor con la Regla 22.3 de Procedimiento Civil, 32 LPRA Ap. V, R.22.3, procedía sustituir a la parte demandante de epígrafe por MWPR. *Moción Para Sustituir Parte Demandante*, Anejo XXII, pág. 94-99 del apéndice del recurso.

y el Sr. Pedro Juan Sierra Ayala (esposos Sierra Ayala o "la parte recurrida").[2] Alegó que, los esposos Sierra Ayala adquirieron un bien inmueble en la Urb. Reparto Valencia en Bayamón, Puerto Rico, y que el 26 de junio de 2003, suscribieron un pagaré hipotecario a favor de Doral Mortgage Corporation (Doral), o a su orden, por la suma de $88,000.00 con interés al 6.875% anual. No obstante, esbozó que el 24 de septiembre de 2009, suscribieron una escritura de modificación de hipoteca, mediante la cual se canceló parcialmente el principal por la suma de $1,527.54 para un nuevo principal de $86,472.46 con interés al 5% anual. Sostuvo que era el tenedor de dicho pagaré y que la parte recurrida incumplió con los términos y condiciones del préstamo hipotecario, puesto que dejaron de efectuar los pagos según pactados.

En virtud de lo anterior, solicitó la suma de $80,289.23 de principal, más intereses ascendentes a $39,520.13, la suma de $2,073.77 por concepto de cargos por demora, la suma d $1,351.20 por concepto de *forced placed insurance",* más cualquier adelanto adicional. Añadió que, de no efectuarse el pago de lo adeudado, procedía la venta del inmueble en pública subasta.

Tras varios trámites procesales los cuales no son necesarios pormenorizar, el 28 diciembre de 2020 la señora Ayala presentó su *Contestación a Demanda* en la cual negó la mayoría de las alegaciones.[3] Asimismo, presentó sus respectivas defensas afirmativas. En la

---

[2] *Demanda*, Anejo I, págs. 1-49 del apéndice del recurso.
[3] *Contestación a Demanda*, Anejo XIII, págs. 71-79 del apéndice del recurso.

misma fecha, el señor Sierra presentó su *Contestación a Demanda.*[4]

Posteriormente, el 26 de marzo de 2021 MMG presentó una *Moción de Paralización por Mitigación de Perdidas (Loss Mitigation) o en su Defecto Para Referido a Mediación Compulsoria.*[5] En esencia, alegó que presentó una petición de mitigación de pérdidas en el mes de febrero, por lo que procedía paralizar el caso hasta tanto dicha solicitud fuera atendida. En la alternativa, solicitó referir el caso a mediación compulsoria.

Luego de examinar dicha moción, el 5 de abril de 2021, el foro primario emitió una *Sentencia* en la cual decretó la paralización de los procedimientos del caso de epígrafe y ordenó su archivo para fines administrativos, puesto que MMG presentó una solicitud de mitigación de pérdidas, la cual estaba pendiente de adjudicación final.[6]

Así las cosas, el 10 de mayo de 2021, MWPR presentó una *Moción Sobre Paralización de los Procedimientos Por Quiebra.*[7] Mediante esta, informó al Tribunal que la señora Ayala se acogió al Capítulo 13 de la Ley Federal de Quiebras, por lo que solicitó la paralización de los procedimientos. Cónsono con lo anterior, el 13 de mayo de 2021, el foro primario notificó una *Resolución* en la cual dejó sin efecto la *Sentencia* emitida el 5 de abril

---

[4] *Contestación a Demanda*, Anejo XIV, págs. 75-79 del apéndice del recurso.
[5] *Moción de Paralización por Mitigación de Perdidas (Loss Mitigation) o en su Defecto Para Referido a Mediación Compulsoria*, Anejo XVI, págs. 82-84 del apéndice del recurso.
[6] *Sentencia*, Anejo XVII, pág. 85 del apéndice del recurso.
[7] *Moción Sobre Paralización de los Procedimientos Por Quiebra*, Anejo XVIII, págs. 86-88 del apéndice del recurso.

de 2021.[8]  En la misma fecha, el foro primario notificó una *Sentencia* en la cual determinó lo siguiente:

> Examinada la Moción presentada por la parte demandante y examinado el caso de autos, se desprende que el Tribunal de Distrito de los Estados Unidos ha tomado providencia judicial bajo la legislación federal de quiebras aplicable, en cuanto a una parte litigante indispensable de autos. Por tal razón, se emite sentencia decretando la paralización de los procedimientos en el presente caso y ordenando el archivo administrativo.
>
> Expresamente reservamos jurisdicción para decretar la continuación de los procedimientos, a solicitud de parte interesada, en caso de que dicha orden de paralización del Tribunal de Quiebras sea dejada sin efecto y se ordene la continuación en este caso, siempre y cuando la solicitud para continuar los procedimientos se presente en el término de seis (6) meses, contados a partir de la fecha en que se notifique esta Sentencia.
>
> En caso de que la reclamación o reclamaciones de autos queden totalmente adjudicadas en el proceso ante el foro de Quiebras y por ello quede extinto lo que aquí se predica, se considerará definitivo este dictamen, independientemente que el Tribunal de Quiebras o parte interesada lo notifique a esta Sala.[9]

Luego, el 6 de febrero de 2025, MMG presentó su *Moción Solicitando Continuación de los Procedimientos*.[10] En síntesis, señaló que el Tribunal de Quiebra desestimó la petición presentada por la señora Ayala el 15 de agosto de 2024.  Así pues, razonó que procedía ordenar la continuación de los procedimientos.  Además, presentó una *Moción Para Sustituir Parte Demandante*.[11] Adujo que, MWPR, LLC (MWPR o "la parte peticionaria") adquirió el préstamo en controversia, convirtiéndose en el tenedor por endoso y de buena fe del pagaré.  Sostuvo que a tenor

---

[8] *Resolución*, Anejo, XIX, págs. 89-90 del apéndice del recurso.
[9] *Sentencia,* Anejo XX, pág. 91 del apéndice del recurso.
[10] *Moción Solicitando Continuación de los Procedimientos*, Anejo XXI, págs. 92-93 del apéndice del recurso.
[11] *Moción Para Sustituir Parte Demandante*, Anejo XXII, pág. 94-99 del apéndice del recurso.

con la Regla 22.3 de Procedimiento Civil, 32 LPRA Ap. V, R.22.3, procedía sustituirlo por MWPR.

El 7 de febrero de 2025, el foro primario notificó una *Orden* declarando No Ha Lugar la *Moción Solicitando Continuación de los Procedimientos*.[12] Luego, el 10 de febrero de 2025, emitió una segunda *Orden* en la cual declaró Ha Lugar la *Moción Para Sustituir Parte Demandante*.[13] Inconforme, el 24 de febrero de 2025, MWPR presentó una *Moción de Reconsideración*.[14] En esta, reiteró sus argumentos iniciales. Adicionalmente, manifestó que, al producirse la desestimación de la solicitud de quiebra, los procedimientos retornaban a su estado previo a la paralización. Por otra parte, enfatizó que el Tribunal carecía de jurisdicción para establecer un término para que las partes presentaran la solicitud de reapertura mientras se mantuviera vigente la paralización en el Tribunal de Quiebras. Atendida la moción de reconsideración, el 28 de febrero de 2025, el foro primario notificó su *Resolución* en la cual resolvió lo siguiente:

> Considerando que la quiebra fue desestimada desde el 15 de agosto de 2024 y que no se expone causa justificada para la dilación en la solicitud de reapertura, se declara No Ha Lugar la solicitud de reconsideración.[15]

Aún inconforme, el 27 de marzo de 2025, la peticionaria presentó el recurso de *Certiorari* que nos ocupa y señaló los siguientes errores:

> Erró el Tribunal de Primera Instancia al emitir, sin jurisdicción, una Resolución que establece un término de seis meses, luego de emitida la Sentencia de Archivo Administrativo, para solicitar la

---

[12] *Orden*, Anejo XXIII, pág. 100 del apéndice del recurso.
[13] *Orden*, Anejo XXIV, pág. 101 del apéndice del recurso.
[14] *Moción de Reconsideración*, Anejo XXV, págs. 102-105 del apéndice del recurso.
[15] *Resolución*, Anejo XXVI, pág. 106 del apéndice del recurso.

reapertura de un caso paralizado por la radicación de una petición de Quiebras en el Tribunal Federal en violación a la legislación federal y al derecho constitucional a un debido proceso de ley.

Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la solicitud de continuación de los procedimientos en caso paralizado por la radicación de una petición de Quiebras en el Tribunal Federal por un codemandado, en violación a nuestro derecho constitucional a un debido proceso de ley y en claro abuso de discreción.

El 11 de abril de 2025, emitimos una *Resolución* mediante la cual concedimos quince (15) días a la parte recurrida para comparecer por escrito a presentarnos su postura. Transcurrido el referido término, la parte recurrida no compareció. Así declaramos perfeccionado el recurso de epígrafe y procedemos a disponer de la controversia, sin necesidad de trámites ulteriores.

## II.

### -A-

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 212 DPR 194 (2023). Véase, además: *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León Corp. v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez,* supra. Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León Corp. v. AIG*, supra. No obstante, la discreción judicial para expedir o no el auto de

*certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez*, supra.

A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. *Scotiabank of PR v. ZAF Corp.*, 202 DPR 478, 486-487 (2019). En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación, ante el Tribunal de Primera Instancia. *García v. Asociación*, 165 DPR 311, 322 (2005); *Meléndez Vega v. Caribbean Intl. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. *Torres González v. Zaragoza Meléndez*, supra. En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León*, supra, pág. 918.

Ahora bien, nuestro Tribunal Supremo ha reiterado que la discreción significa poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago,* 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago*, supra, pág. 581; *SLG Flores, Jiménez v. Colberg*, 173 DPR 843 (2008).

-B-

El Código de Quiebra federal establece que la presentación de la petición de quiebra tiene el efecto inmediato y directo de paralizar, "entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto contra el deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra". *Allied Management v. Oriental Bank*, 204 DPR 374 (2020), citando a *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 490-491 (2010). Es decir, como regla general, y sujeto a ciertas excepciones y condiciones, esta paralización automática tiene el efecto de congelar todo proceso judicial o extrajudicial de cobro de dinero en contra de deudor, así como la ejecución de sentencias obtenidas previo al inicio del caso.

El propósito de la paralización es proveer un respiro al deudor y proteger también a sus acreedores, pues evita que los activos del deudor desaparezcan de forma desorganizada ante las acciones individuales de otros acreedores. Véase, *Collier on Bankruptcy*, Lawrence P. King (1996), 15th ed., Vol. 3, sec. 362.03. Destacamos que los efectos de la paralización se manifiestan desde que se presenta la petición de quiebra, hasta que recae la sentencia final, y no requiere de una notificación formal para que surta efecto. *Allied Management v. Oriental Bank*, supr, citando a Marrero *Rosado v. Marrero Rosado*, 178 DPR 476 (2010). También, provoca que los tribunales estatales queden privados de jurisdicción automáticamente. *Marrero Rosado v. Marrero Rosado*, 178 DPR, a la pág. 491. Debido a la falta de jurisdicción, cualquier procedimiento realizado en violación de esta paralización resulta nulo y sin efecto legal. *Peerles Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012).

De otra parte, cuando se desestima la petición de quiebra, se deja sin efecto la paralización automática y se reinstalan los procedimientos que se dilucidaban contra el peticionario de la quiebra con anterioridad a la interposición de la petición. Es decir, al producirse la desestimación de la solicitud de quiebra, los procedimientos retornan a su estado previo a la paralización.

### III.

En síntesis, la parte peticionaria alega que el foro primario incidió al emitir una *Resolución* sin jurisdicción, la cual establecía el término de seis (6) meses para solicitar la reapertura del caso de epígrafe

paralizado por la radicación de una petición de Quiebra. Ello, luego de emitida la *Sentencia* de Archivo Administrativo. Por otra parte, aduce que el foro primario erró al declarar *No Ha Lugar* la solicitud de continuación de los procedimientos en un caso paralizado por la radicación de una petición de Quiebras en el Tribunal Federal. Todo lo anterior en violación a la legislación federal y al derecho constitucional a un debido proceso de ley. Por estar estrechamente relacionados, procedemos a discutir los señalamientos de error de forma conjunta.

Según surge del expediente, tras la desestimación de la petición de quiebra el 15 de agosto de 2024, MWPR solicitó al foro primario la reapertura del caso y la continuación de los procedimientos el 6 de febrero de 2025. No obstante, el foro primario declaró *No Ha Lugar* dicha solicitud y lo remitió a la *Sentencia* emitida el 12 de mayo de 2021. En esta última, el foro primario resolvió que, las partes contaban con seis (6) meses, contados a partir de la notificación de la *Resolución* del caso en el Tribunal de Quiebras, para solicitar la continuación de los procedimientos.

Según el derecho previamente expuesto, la mera presentación de una petición de quiebra tiene el efecto automático de paralizar todo proceso judicial, administrativo o de otra índole, además, impide la continuación de cualquiera de los anteriores. De igual forma, provoca que los tribunales estatales queden privados de jurisdicción automáticamente. Por otra parte, cuando se desestima la petición de quiebra, como en el presente caso, se deja sin efecto la paralización automática y se reinstalan los procedimientos que se

dilucidaban contra el peticionario de la quiebra con anterioridad a la presentación de la petición.

No obstante, el foro primario declaró sin lugar la solicitud de continuación de los procedimientos e impuso un término de seis (6) meses para presentar dicha solicitud. Ello, en contravención a lo dispuesto en el Código de Quiebra con relación a la paralización automática de una petición y en claro abuso de su discreción.

En virtud de lo anterior, concluimos que, el foro primario abusó de su discreción al imponer un término para solicitar la reapertura del caso y, posteriormente, al declarar sin lugar la solicitud para la continuación de los procedimientos. La ley es clara cuando dispone que una vez se desestima la petición de quiebra, se deja sin efecto la paralización automática y se reinstalan los procedimientos ante el foro primario. Es decir, al producirse la desestimación de la solicitud de quiebra, los procedimientos retornan a su estado previo a la paralización.

Por ello, y en aras de la economía procesal y en armonía con los preceptos de las Reglas de Procedimiento Civil, *supra*, procede devolver el caso de epígrafe al foro primario para la continuación de los procedimientos cónsono con lo aquí resuelto. Consecuentemente, determinamos que los dos (2) errores señalados fueron cometidos por el foro recurrido.

**IV.**

Por los fundamentos expuestos antes expuestos, **EXPEDIMOS** el auto de *certiorari* y **REVOCAMOS** el dictamen recurrido. En consecuencia, devolvemos el caso al

Tribunal de Primera Instancia, para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones